GILL et al. v. CITY OF DALLAS et al.
(No. 8185.)

(Court of Civil Appeals of Texas. Dallas. Feb. 8, 1919.)

1. MUNICIPAL CORPORATIONS ⬅592(1) — OR-DINANCES—CONFLICT WITH GENERAL LAWS —JITNEY ON STREETS.

Ordinance of Dallas of August 2, 1918, entitled one regulating local street transportation, and excluding from a certain zone regular lines of jitneys, held not in conflict with or repugnant to Acts 35th Leg. c. 190, creating a state highway department, or chapter 207, regulating operation of motor vehicles, in view of section 25 of the former (Vernon's Ann. Civ. St. Supp. 1918, art. 7012½h), and section 23 of the latter, reserving to local authorities power to license and regulate the use and operation of vehicles for hire.

2. MONOPOLIES ⬅6—USE OF STREETS—JIT-NEYS—ORDINANCES.

An ordinance forbidding jitneys within a certain zone does not create a monopoly, in violation of Const. art. 1, §§ 1, 26, in favor of street railways.

3. CONSTITUTIONAL LAW ⬅292 — EMINENT DOMAIN ⬅2(6)—MUNICIPAL CORPORATIONS ⬅661(2) — TAKING PROPERTY — USE OF STREETS BY JITNEYS.

An ordinance excluding jitneys from a certain zone does not, in violation of Const. art. 1, §§ 17, 19, and Const. U. S. Amend. 14, take property and privileges, without due compensation or process of law, of jitney companies which, under former ordinances and statutes, made investments in the business; their use of the streets being the exercise of a mere license, revocable at the will of the licensor.

4. MUNICIPAL CORPORATIONS ⬅661(2)—REG-ULATION OF STREETS—LEGISLATIVE POWERS OF STATE.

The exercise by city of powers delegated to it under authority of provisions of the Constitution to regulate local street transportation is not in violation of the state's right of government provided for by Const. art. 1, § 1, even if it has application to the state's internal affairs.

5. CONSTITUTIONAL LAW ⬅63(2)—LEGISLA-TIVE POWERS—DELEGATION.

An ordinance regulating use of streets by jitneys, passed in the exercise of delegated power, is not void as exercise of legislative power reserved by Const. art. 3, § 1, to the state.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by D. H. Gill and others against the City of Dallas and others. From an adverse judgment, plaintiffs appeal. Affirmed.

William H. Clark, of Dallas, for appellants. A. S. Hardwicke and Lawther & Pope, all of Dallas, for appellees.

RASBURY, J. This is an appeal from the action of the trial judge in sustaining exceptions to the sufficiency of appellants' petition and refusing an interlocutory injunction restraining appellee pendente lite from the enforcement of an ordinance affecting appellants' right to operate motor busses, or jitneys, over and upon the streets of Dallas.

After properly alleging appellants' right to maintain the suit, and that appellee was a municipal corporation by authority of special act of the Legislature and amendments thereto, the petition alleged, in substance, the following material facts: Prior to and on January 5, 1917, appellants and many others were, under existing ordinances, licensed by appellee to operate motor busses or jitneys upon the public streets of Dallas, and were so engaged at that time. On that date appellee, by its mayor and board of commissioners, enacted another ordinance declared to be for the purpose of regulating the operation of such vehicles, and repealed all former ordinances in that respect. On January 11, 1917, appellants and others affected thereby attacked the validity of said ordinance by suit in the district court. Upon hearing in the district court the ordinance was for various reasons declared void, and hence unenforceable, and the appellee and its officers perpetually enjoined from attempting to enforce same. On appeal to this court the ordinance was held valid, the judgment of the district court reversed, and the injunction dissolved. City of Dallas v. Gill, 199 S. W. 1144. On May 5, 1918, the Supreme Court of Texas in said case denied application for writ of error (202 S. W. xvi), and on June 12, 1918, denied motion for rehearing. On June 29, 1918, the

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Chief Justice of this court granted a writ of error to the Supreme Court of the United States, but refused to supersede the judgment of this court. On July 30, 1918, one of the Associate Justices of the Supreme Court of the United States ordered the judgment stayed until further orders upon the giving of bond, etc. The bond was filed in this court August 2, 1918, whereupon those engaged in the jitney service resumed the business. Matters so standing, the city of Dallas, through its mayor and board of commissioners, on August 2, 1918, enacted another ordinance entitled "An ordinance regulating local street transportation in the city of Dallas." Local street transportation was variously defined, and included vehicles which transported passengers for hire over the streets without previous agreement, ordinarily upon regular routes, and being the kind of service usually furnished by jitneys in competition with a street railway service, which included the vehicles or jitneys operated by appellants, and excluded from its provisions all motor vehicles engaged in local street transportation which made trips under special employment, and which remained in and upon private premises or legally authorized stands or garages when not so engaged. It was declared unlawful for any person firm, corporation, association, partnership, or society to engage in the street transportation so defined within a defined district. The district or zone from which such vehicles were excluded is a wide, irregular circle around the heart of business center of the city. All former ordinances in conflict with the new act were repealed. Any person convicted for violating the ordinance is subject to fine of not less than $25 nor more than $200, every single passenger transported within the prohibited territory constituting a separate offense. The ordinance declared that due to the great confusion and congestion upon the city streets for lack of sufficient traffic regulations, and due to the great public necessity for the protection and preservation of public peace, health, and safety, an emergency was created authorizing the immediate passage of the ordinance, which was accordingly done. After the enactment of the ordinance the present suit was commenced for the purpose, as we have said, of restraining its enforcement. The grounds upon which the relief was sought are numerous, and are reflected in the assignments of error presently to be considered, and in connection with which we will recite any further fact alleged in the petition necessary to a fair and correct determination of the issues.

[1] Under authority of the first assignment of error it is contended that the ordinance is void because in conflict with and repugnant to recent acts of the Legislature creating a state highway department (chapter 190, p. 416, Gen. Laws Reg. Sess. 35th Leg.), and regulating the operation of motor vehicles (chapter 207, p. 474, Gen. Laws Reg. Sess. 35th Leg.). The general purpose of the state highway department act is to authorize the commissioners therein provided for to formulate plans and policies for the location and construction of a comprehensive system of state public roads, and to provide the necessary funds with which to effectuate that purpose, by requiring every character of motor vehicle in use in the state to register with the department, pay the fee or tax fixed by the act, depending upon the carrying capacity of the cars., etc., and receive a license from the department. The act regulating the operation of motor vehicles has for its general purpose that which is indicated by its title, including the registration, licensing, and identification of motor vehicles and persons operating them, and prohibiting their operation by others, prescribing traffic regulations upon the state highways, and limiting local authorities in the enactment of laws in conflict with the act, providing for its enforcement, and affixing penalties for its violation. While the provisions of both acts are numerous, none of them, in our opinion, affect the present controversy, save those immediately cited. By section 16 of the act (Vernon's Ann. Civ. St. Supp. 1918, art. 7012½) creating the state highway department it is provided, in substance, that, in order to provide funds to effectuate the purpose of the act, every owner of one or more motorcycles or motor vehicles shall register same in the manner directed by the act, accompanying his application for registration by the required fee. Section 17 provides that, upon receipt of application for registration and the prescribed fee, certificate or license card shall be issued identifying the vehicle and owner, etc., together with a metal seal, to be conspicuously displayed upon the radiator of the car. Section 25 (article 7012½h) declares, in substance, that the registration certificate and license fees provided for in the act shall be in lieu of all similar requirements by any county, municipality, or other political subdivision of the state, which are forbidden to impose similar burdens upon such vehicles, save that incorporated cities and towns shall retain the right "to license and regulate the use of motor vehicles for hire." Section 27 (article 7012½i) repeals all laws in conflict with the act. By section 23 of the act regulating the operation of motor vehicles it is provided, among other matters, that the speed regulations therein fixed shall be exclusive of all similar regulations fixed by any political subdivision of the state, save that such political subdivisions may pass ordinances or regulations for the purpose of establishing orderly passage of vehicles upon highways or portions thereof where traffic is heavy and continuous, and except that "the powers now or hereafter vested in local authorities to license and regulate the opera-

tion of vehicles offered to the public for hire * * * shall remain in full force and effect, and all ordinances, rules, and regulations which have been, or which may be, hereafter enacted in pursuance of such powers shall remain in full force and effect."

The foregoing are the provisions upon which appellants' claim of conflict and repugnancy is founded. With such provisions they had complied, and were licensed by the state of Texas at the time the ordinance was enacted, and entitled to all the privileges contemplated thereby. Counsel argues that it was clearly the purpose and intention of the Legislature in enacting such laws to assume exclusive control of the operation, taxation, and licensing of every character of motor vehicle, including those defined by the ordinance, upon the highways of the state, which includes city streets, and that when licensed by said act owners of such vehicles were entitled to operate same for any and every lawful purpose over and upon any city street within the state, without any right in municipal government to interfere with them in the manner attempted by the ordinance under construction. We cannot agree with the contention. While it may not be denied that the acts of the Legislature clearly evidence a purpose to assume, in a large sense, exclusive control of motor vehicles, it with equal clearness evidences, in our opinion, an intention to reserve to municipalities a similar control in certain particulars. The taxing power is one of the exclusive rights assumed by the state, as is evidenced by section 16 of the state highway department act, which requires every motor vehicle to register and pay the required fee to the state, and section 25 of the same act, which prohibits other political subdivisions of the state from imposing similar burdens. When said fees are paid and the other provisions of the act complied with the owners' right to travel the public highways, including the city streets, in the usual and ordinary way will not be disputed. At the same time it appears with equal clearness from said section 25 of the state highway department act, and from section 23 of the act regulating the operation of motor vehicles, that certain powers upon the subject were by the Legislature expressly reserved to the local authorities of the political subdivisions of the state. The power reserved in said section 25 is "to license and regulate the use of motor vehicles for hire," while that reserved in said section 23 is "the power now or hereafter vested in local authorities to license and regulate the operation of vehicles offered to the public for hire." It is of consequence here to note that there is a wide distinction between the incidental transaction of business in the exercise of the right to travel the public highways in the ordinary way and the right to use such highways as a place upon which to conduct business. While the right to use public highways for ordinary travel or use, and incidentally the transaction of one's business, is a common privilege of the public, the right to use such highways upon which to conduct business, or to put such highway to some peculiar, special, or exceptional use, in order to conduct or maintain business thereon, is always subject to the will of the state or the political subdivisions thereof to which such power has been delegated. It is, of course, a well-settled and generally accepted rule that municipalities may not prohibit occupations or businesses lawful under general laws, though, generally speaking, they may license and regulate under authority of legislative grant. Whether one in pursuit of a lawful business or occupation may put the public highways to a peculiar or exceptional use— that is to say, conduct his business exclusively thereon—is a widely different matter. Certainly, the citizen has no common or inherent right in that respect. The state or the city, when the power is delegated, clearly may grant such privilege, or may refuse it, and thereby prohibit the use of the street. Occupations or business conducted wholly upon the public highway are enjoying mere privileges, which may be revoked or denied by the local authorities whenever the health, peace, or safety, of the general public warrant it. The rule is founded in reason and justice, and is supported by decisions and texts, many of which are cited in Ex parte Parr (Tex. Cr. App.) 200 S. W. 404. The provisions cited from the acts relate, not to the right to regulate the public in the usual and ordinary travel upon the public highways, but the right to regulate the operation and use of vehicles for hire. The provisions are in both measures, and their insertion was obviously studied and deliberate in the light of the comprehensiveness of the measures. Their meaning is clear, unambiguous, and leaves nothing to construction, and means no less than that cities are permitted to regulate the use and operation of vehicles upon their streets for hire, which is but to say that they may regulate and license the conduct of local transportation upon their streets as attempted by the ordinance, and which it occurs to us is a precise exercise of the power reserved to them by the act. If it was not intended to reserve to cities the regulation of the business in which appellants seek to engage, then the reservation is surely meaningless, since the business is purely the offering to the public of motor vehicles for hire. We accordingly conclude that there is neither conflict nor repugnancy in the provisions of the legislative acts and the ordinance.

It is also contended that the ordinance is void because in violation of section 28, art. 1, Const., which, in substance, reserves to the Legislature only the power to suspend laws, and because in violation of article

1096a, Vernon's Sayles' Ann. Civ. Stats. Tex., and art. 2, § 1, subd. 2, of the city charter, forbidding, respectively, the grant to cities of power to pass ordinances inconsistent with the Constitution or general laws of the state, or the exercise of such power by cities. The foregoing contention depends obviously upon the assumption that the ordinance is in conflict or repugnant to the state highway department act or the act regulating the operation of motor vehicles. As a consequence, if we are correct in our conclusion on that issue such contention is without force.

[2] It is also contended that the ordinance is void because in violation of sections 1 and 26, art. 1, Const., forbidding monopolies, the precise point being that the ordinance, by abolishing jitneys, creates a monopoly in favor of the street railways. In connection with the issue so presented it is alleged in the petition that it was the purpose of appellees' officers to abolish and prohibit the operation of jitneys in the city of Dallas by the enactment of the ordinance complained of and that such was its effect. The allegation is to be accepted as a fact unless the contrary appears from an inspection of the ordinance attached to, and made a part of, appellants' petition. We conclude the effect of the ordinance was to abolish the jitneys, whatever may have been the intention of appellee's officers. We base the conclusion upon the common knowledge we possess concerning the geographical situation of the zone from which jitneys are prohibited. The zone envelops, as we have said, the business heart of the city. The public obviously would not patronize conveyances that could not reach the business center. As a consequence the use of jitneys is out of the question so far as the convenience of the public is involved. That fact may be conceded, and yet the ordinance, in our opinion, would not be void because it creates a monopoly within the contemplation of the Constitution. Ordinarily, whether persons, firms, or corporations are exercising monopolistic privileges or immunities is determined by the grant, right, or permission under which such persons, firms, or corporations are operating. Under what character of grant the street railways are operating does not appear, but it must be assumed that, since the Constitution forbids grants creating monopolies, no such grant was made. On the other hand, the mere refusal of a municipality to grant a franchise or permission to others who desire to compete with those already in possession of a franchise or permit does not, in our opinion, create a monopoly. Franchises or permits to use city streets by public utilities are not privileges to be granted as matter of course upon the asking. Sufficient public utilities are a great convenience; too many might be an equal inconvenience, to be determined in every case by the local authorities. The convenience, peace, health, and safety of the citizens necessarily determine the number and extent of similar competing utilities which are to be permitted to operate. While none may be given exclusive or monopolistic rights, it does not follow that all are entitled to enter upon the city streets. The officers of municipalities are charged with the responsibility of conserving the convenience of the citizens in such matters, as well as providing for their peace, health, and safety. Whether they have fairly done so is obviously not a judicial question.

[3] It is also contended that the ordinance is void because in violation of sections 17 and 19, art. 1, Const., and of amend. 14, Const. U. S., because it attempts, as relates to the state Constitution, to take the property and privileges of appellants without either due compensation or process of law, and, as relates to the federal Constitution, to do so without due process of law. The precise issue urged is that, as alleged in their petition, appellants under former jitney ordinances, and under the state highway department act, and the act regulating the operation of motor vehicles, were licensed to pursue the business in which they were engaged at the time of the enactment of the ordinance involved in this proceeding, and upon the faith of which they made large investments, of which they will be deprived by the enforcement of said ordinance. If, as matter of fact, investments were so made—and it is to be assumed they were—that fact confers upon appellants no vested right to continue upon the streets, since their use of the streets was the exercise of a mere license, revocable at will of the licensor. Newson v. City of Galveston, 76 Tex. 559, 13 S. W. 368, 7 L. R. A. 797.

[4] The contention also is made that the ordinance is void for the reason that it violates section 1, article 1, of the Constitution, which declares that, subject to the Constitution of the United States, Texas is free and independent, and that the maintenance of free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired, to all the states. The contention is that the exercise of the powers contained in the ordinance is a denial of that right to the state. While we think the section of the Constitution quoted is a declaration directed against the exercise by the national government of those powers reserved to the states, at the same time if it has application to the state's internal affairs other clauses of the Constitution, as we have noted, authorize the delegation to political subdivisions of the state by the Legislature of the functions reserved to it, including the power exercised by the appellee in the ordinance under construction.

[5] It is also claimed that the ordinance is void because it is an attempted exercise of the legislative power reserved to the state by section 1, art. 3, of the Constitution. While

all legislative power is reserved to the state, that power may, of course, be delegated to other governmental agencies, and we have heretofore held in a number of cases that the power exercised in the ordinance was delegated to the city of Dallas, and that it was such power as the Legislature was authorized to delegate.

Finding no reversible error in the record, the judgment is affirmed.

Affirmed.