## Scott, Mayor, *et al. v.* Hart *et al.*

[91 South. 17.   No. 22412.]

1. MUNICIPAL CORPORATIONS. *Ordinance requiring taxi drivers to satisfy mayor and council of their fitness held not arbitrary or unreasonable.*

   An ordinance which provides that no person shall drive, operate, or control, while in use for hire on the streets of a city, a public taxi or vehicle for carrying passengers, until he shall satisfy the mayor and councilmen that he is a person of sufficient age and discretion, of fair character and integrity, and not addicted to the use of intoxicating liquors or narcotics, is not an arbitrary or unreasonable provision.

2. MUNICIPAL CORPORATIONS. *Right to transport property over street is common to all citizens.*

   The right of a citizen to use the highway and transport his property over it in the ordinary course of life and business is the usual and ordinary right—a right common to all citizens.

3. MUNICIPAL CORPORATIONS. *Use of streets as a place of business for private gain is really a privilege and subject to legislative or municipal regulations.*

   The right to use the streets of a city for a place of business and private gain by the operation of automobiles for hire is a special, unusual, and extraordinary right, over which the powers of the legislature or the city to regulate are very broad. It is really a privilege instead of a natural right.

4. MUNICIPAL CORPORATIONS. *Use of streets as place of business is mere privilege and not matter of natural right.*

   No private individual or corporation has a right to the use of the streets in the prosecution of the business of a carrier for private gain without the consent of the state or municipality, nor except upon the terms and conditions prescribed by the state or municipality. The use of the streets as a place of business is accorded as a mere privilege and not as a matter of natural right.

5. CONSTITUTIONAL LAW. *Ordinance relating alone to the licensing of operators of automobiles for hire and the regulation thereof held reasonable classification.*

   A municipal ordinance relating alone to the licensing of operators of

128 Miss.—23

automobiles for hire and the regulation thereof upon the public streets of a municipality is a reasonable classification.

6. MUNICIPAL CORPORATIONS. *Ordinance providing for licensing and use of streets by automobiles for hire held reasonable.*
   In this case an ordinance providing for the licensing and use of the streets of the city by automobiles for hire *held* to be reasonable.

APPEAL in chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Bill by Brit Hart and others against W. A. Scott, Mayor of the City of Jackson, and others. From a decree in favor of the plaintiffs, the city appeals. Reversed, and bill dismissed.

*Howie & Howie,* for appellant.

*Green & Green,* for appellees.

SYKES, P. J., delivered the opinion of the court.

The appellees are engaged in the business of operating taxicabs for hire in the city of Jackson. They allege in their bill that—"The business of operating a taxicab for hire is such that in its very nature the complainants are compelled to be on the street at all times where they can see those desiring taxicabs and where they can be found. In order for their business to be profitable they of necessity have to be around and near those places where customers are likely to be found. There are only two ways that a business of this kind can be handled, one is to have a garage somewhere near the depot and hotels, or an office in such place and keep cars in a garage and let the customers look up the taxi, and the other is to have the taxi handy so that those operating can locate the customer."

That complainants operate under the second method. The bill alleges that an ordinance passed by the city of Jackson regulating the use of the streets by taxicabs for hire is unreasonable, discriminatory, and therefore void. The sections of the ordinance in question are as follows:

"Section 1.   That no person shall drive, operate or control, while in use for hire on the streets of said city, any public taxi or vehicle for carrying passengers in the city of Jackson, until he shall satisfy the mayor and councilmen thereof that he is a person of sufficient age and discretion, of fair character and integrity, and not addicted to the use of intoxicating liquors or narcotics, and shall have received from said mayor and councilmen a permit so to do as hereinafter provided; and the owner of such taxi or vehicle shall not place in charge of said taxi or vehicle any person not having such permit.

"Sec. 2.   That before any person shall drive, either for his own account or for some other person any public taxi or vehicle carrying passengers for hire in the city of Jackson he shall make application to the council of the said city for a permit; and if it shall appear that the applicant is of sufficient age and discretion, and is a suitable person to engage in the business of operating and driving a public taxi or vehicle carrying passengers for hire in said city, said board shall make an order directing the clerk of said city to issue a permit to such applicant, and such permit shall be issued under seal of said city and shall be good until revoked by said mayor and councilmen for good cause upon hearing of which the party shall have a reasonable notice and opportunity to be heard.

"Sec. 3.   That no person in charge of any public taxi or vehicle carrying passengers for hire shall permit the same, except when receiving or discharging passengers or when instructed by their passengers so to do, to stand on any of the streets, avenues or alleys in the city of Jackson for any longer period than five minutes, except as otherwise herein provided.

"Sec. 4.   That no driver of any such taxi or vehicle used for carrying passengers shall use any vulgar or profane language while in charge of such taxi or vehicle, and he shall not leave his taxi while operating same upon any of the streets or alleys of said city; and that he shall not carry or permit to ride in his said taxi or vehicle any per-

son except a *bona fide* passenger, or permit any loitering in his taxi or vehicle while same is being held out for public hire upon the streets of said city.

"Sec. 5. That no public taxi or vehicle for carrying passengers or any public transfer, wagon or vehicle, shall be permitted to use any of the public streets of said city as a station or stand for the carrying on of their business; provided that such taxi, vehicle, wagon or transfer may be stationed on Esau street in suitable manner so as not to impede or block traffic, for a period of ten (10) minutes before and five (5) minutes after the arrival of passenger trains at the Union Depot of said city.

"Sec. 6. That no taxi, automobile or other vehicle for hire shall be permitted to park in the alleys of said city, within the paved area of business district thereof."

The cause was tried upon bill, answer, and testimony, and the chancellor held certain portions of these sections unreasonable. From which decree the city prosecutes this appeal.

The chancellor held that part of section 1 void which provides that the applicant "shall satisfy the mayor and councilmen thereof that he is a person of sufficient age and discretion, of fair character and integrity. The qualifications necessary to be possessed by the applicant are set forth in both sections 1 and 2 and must be construed together.

We have various statutes in this state requiring an applicant to be examined upon his good moral character before being granted a license to practice certain professions. Namely, one on pharmacists (3671); physicians (3682); and even lawyers (208). In all of these sections the examining board must be satisfied of the good moral character of the applicant just as the board must be satisfied under this ordinance.

Section 3 of the ordinance was held to be unreasonable in not permitting the taxicabs, except when receiving or discharging passengers, or when instructed by their passengers so to do to stand on any of the streets, alleys, and

avenues of the city of Jackson for a longer period than five minutes, except as provided in section 5 of the act.

In order to pass upon the reasonableness of this ordinance it is necessary to consider what rights, if any, taxicab drivers for hire have to pursue their business of soliciting passengers upon the public streets of the city. The reasonableness of this ordinance depends upon a proper understanding of this question. There is a vast difference between the rights of a citizen to travel upon the highways and transport his property over them in the ordinary course of life and business and the right or privilege of one who uses the highway for his place of business and private gain. The rule is thus well stated in Huddy on Automobiles (5th Ed.), p. 193, section 153:

"The former (referring to the right of a citizen to use the highway) is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter (taxicab driver for hire) is special, unusual and extraordinary. As to the former the extent of legislative power is that of regulation, but, as to the latter, its power is broader, the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature."

The ordinance in question does not attempt to prohibit the operation of automobiles for hire, but only to see that suitable persons are licensed to conduct this business and to regulate the business within the city limits. This is not a natural right to the use of these streets, but is a privilege to conduct this business upon the streets. It is an added easement or burden upon the street, permitting the public streets to be used as a place for the carrying on of a business for private gain. The real contention in this case by the appellees is that they are not allowed to park their cars for an unlimited length of time wherever they please in the public streets and more especially around the depot and hotels. The ordinance permits them to carry passengers over any streets to any point in the city. It permits them upon the request of the passenger to wait for him.

They are not allowed to stand on any of the streets for a longer period than five minutes, under section 3, except when instructed by the passenger so to do. In other words, in soliciting business when they have no passenger or are not waiting for a passenger they are not permitted to stop at any one place for a period over five minutes. They are not allowed to establish in the public streets a stand for their cars, or to make out of the public street a garage. Even if the ordinance permitted them so to·do, the private property owner in front of whose property such a stand was made could most likely have it abated as a nuisance. As is said in the well-reasoned opinion of the supreme court of Washington in the case of *Hadfield* v. *Lundin,* 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942:

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege, and not as a matter of natural right."

Again in the same case, after citing a number of cases bearing upon the question and referring to those cases, it is said:

"They all recognize the fundamental distinction between the ordinary right of a citizen to use the streets in the usual way and the use of the streets as a place of business or main instrumentality of a business for private gain. The former is a common right, the latter an extraordinary use."

To the same effect is *Schoenfeld* v. *City of Seattle* (D. C.), 265 Fed. 726.

The power of regulation of a business of this kind is well stated in the opinion of the court in the case of *Ex parte Dickey,* 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840:

"Such pursuits as agriculture, merchandising, manufacturing and industrial trades cannot be dealt with at will by the legislature. As to them, the power of regulation is comparatively slight, when they are conducted and carried on upon private property and with private means. But when a citizen claims a private right in public property, such as a street or park, a different situation is presented. Such properties are devoted primarily to general and public, not special or private uses, and they fall within almost plenary legislative power and control. In them, all citizens have the usual and ordinary rights in an equal degree and to an equal extent. In the regulation thereof, the legislature cannot discriminate. But, as regards unusual and extraordinary rights respecting public properties, its power of control and regulation is much more extensive. Such rights are in the nature of concessions by the public, wherefore the legislature may give or withhold them at its pleasure. It may give them for some purposes and withhold them for others, and in the case of those given, it may, upon considerations of character, quality and circumstances, discriminate, permitting some things of a general class or nature to be done and refusing to permit others of the same general class to be done, or extending the privilege to some persons and denying it to others because of differences of character or capacity."

To the same effect are *State ex rel. Schafer* v. *City of Spokane,* 109 Wash. 360, 186 Pac. 864; *Peters* v. *City of San Antonio* (Tex. Civ. App.), 195 S. W. 989; *Greene* v. *City of San Antonio* (Tex. Civ. App.), 178 S. W. 6; *Gill* v. *City of Dallas* (Tex. Civ. App.), 209 S. W. 209; *Huston* v. *Des Moines,* 176 Iowa, 455, 156 N. W. 883; *Cummins* v. *Jones,* 79 Or. 276, 155 Pac. 171.

The testimony in the case shows that almost all of the business of the appellees is gotten around the Union Station and hotels, and that unless they are allowed to park longer in this part of town their business will be seriously crippled. Strenuous objection is made to section 5, which prohibits them from parking on Esau street except for ten minutes before and five minutes after the arrival of passenger trains. Conceding that their business would be much more profitable were they allowed to park on Esau street for as long a time as they wish and also on other streets does not make the ordinance unreasonable. The testimony shows that there is a great deal of traffic in this particular part of the city and that one of the reasons for the passage of this ordinance was to prevent congestion of traffic. This business, however, of operating a public taxicab for hire on the streets of the city, as hereinbefore pointed out, is a privilege and not a right. An additional burden is thereby placed upon the streets. The establishment of a taxicab stand in front of the private property of a citizen would give him a right of complaint. The ordinance gives these appellees the privilege of stopping for five minutes when not transporting or waiting for passengers. They are allowed to wait for a passenger an unlimited time when requested by the passenger so to do. They have the unrestricted use of all the streets of the city. They have no right to demand to be allowed to park their cars for an indefinite length of time upon the public streets. We find nothing in the ordinance unreasonable.

It is a reasonable classification of this business as taxicabs for hire, and an ordinance dealing solely with them is valid, as is demonstrated by the above authorities. From these views it follows that the ordinance is reasonable and valid.

The decree of the lower court is reversed, and the bill dismissed.

*Reversed and bill dismissed.*