## FRICK v. CITY OF GARY.

[No. 23,761.   Filed May 12, 1922.]

1. CONSTITUTIONAL LAW.—*Regulation of "Jitney Busses."*—*Municipal Ordinance.* — *Validity.* — *Arbitrary Classification of Motor Vehicles.*—*Constitutional Provisions.*—The word "taxicab" has a well-defined meaning and is used to designate a vehicle which operates from a fixed station at which the driver receives passengers or receives telephone calls directing him where passengers will be found, and which drives to the destination of passengers over any streets which are available for such travel, and taxicabs should not be classified with

motor vehicles which drive back and forth along one street, picking up passengers from the sidewalks, though the same kind of vehicle may be used in each business; hence, a municipal ordinance forbidding the operation of any vehicle engaged in the carriage of passengers for hire to take on or discharge passengers on designated streets, but which excepts therefrom street cars and taxicabs, is not invalid on the ground that it arbitrarily classifies as different two things which are essentially the same, in violation of Art. 1, §23 of the Constitution, declaring that no privileges or immunities shall be granted to any citizen or class of citizens which, upon the same terms, shall not equally belong to all citizens. p. 80.

2. CONSTITUTIONAL LAW.—*Regulation of "Jitney Busses."—Municipal Ordinance.—Validity.—Taking Property without Compensation.—Constitutional Provisions.*—A municipal ordinance forbidding any vehicle, except street cars and taxicabs, to stop to receive or discharge passengers for hire on designated streets is not invalid in depriving one operating a "jitney bus" without a franchise of his property without just compensation, in violation of Art. 1, §21, of the Constitution, since one engaged in the conduct of a business in a public highway, without a franchise to do so, has no property in the right to continue such business. p. 82.

3. CARRIERS.— *Common Carriers.— Vehicles Transporting Passengers for Hire over Fixed Route.*—One who operates a vehicle over a fixed route along a city street, and, to the capacity of the vehicle, carries for hire any persons who may hail him from the sidewalk and ask for passage, is a common carrier of passengers. p. 82.

4. MUNICIPAL CORPORATIONS.—*Use of Streets.—Common Carrier Receiving and Discharging Passengers.*—A common carrier of passengers on a public highway has no constitutional right to select a street for use in receiving and discharging passengers. p. 82.

5. MUNICIPAL CORPORATIONS.— *Use of Streets.— Regulation of "Jitney Busses."— Power of City.— Statutes.*— Under §8964 Burns 1914, Acts 1905 p. 383, §269, and §8655 subdvs. 31, 38, 53, Burns 1914, Acts 1905 p. 219, §53, a municipal corporation has the power to enact an ordinance forbidding vehicles carrying passengers for hire from stopping on designated streets to receive or discharge passengers, such ordinance being a regulation of the use of streets. p. 83.

· From Lake Superior Court; *Charles E.· Greenwald,* Judge.

Action by Henry Frick against the city of Gray. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*McMahon & Conroy, Gavit, Hall & Smith* and *A. M. Stein,* for appellant.

*James A. Patterson, Robert M. Davis* and *Oliver Starr,* for appellee.

EWBANK, C. J.—Appellant was the owner and the driver of a "jitney bus" in the city of Gary at the time a city ordinance was enacted which forbade the drivers of such vehicles to receive and discharge passengers on certain of the streets of that city. The only question presented for decision is the validity of a section of that ordinance, which, as amended, forbids said acts under penalty of a fine not exceeding $300. The amended section reads (in part) as follows: "It shall be unlawful for any person, firm or corporation to operate any vehicle, except street cars and taxicabs, engaged in the carriage of passengers for hire, to stop to take on or discharge passengers upon Broadway, Washington street, Massachusetts street, Connecticut street or Adams street, public highways in the city of Gary," etc.

Appellant denies the validity of this section of the ordinance because, as he insists, (1) The legislature has not conferred upon the city council statutory authority to enact it, and because, he says (2) the ordinance and such a statute, if there be one, are in violation of Art. 1, §§21, 23, Constitution of Indiana, which forbids the taking of private property without compensation, or the granting of privileges and immunities to any citizen or class of citizens which, upon the same terms, shall not belong to all citizens.

The complaint, to which a demurrer was sustained, asked for an injunction forbidding the city to enforce

the ordinance. It alleged that the streets named extend south from the northern limits of the city of Gary, through the principal business section, a distance of four miles to the southern limits of the city, and are the only north and south streets in the business section; that Broadway is 100 feet in width and runs south from the main entrance of a manufacturing plant which employs 8,000 men, who must pass along Broadway south to Third avenue in order to reach any other street, as no others extend north of that avenue; that there are sidewalks nineteen feet wide on either side, and a street railway with a brick pavement between the rails and tracks on Broadway; that every bank, department store and railroad passenger station in the city of Gary, the principal hotels, and three-fourths of all the mercantile houses are located on Broadway; that the other named streets are located at distances of one and two squares, east and west of Broadway, respectively, and have many business houses and ample sidewalks, but there are no street railways thereon; that streets running east and west intersect these streets, but the five streets named are all that extend north and south through the central business section of Gary, or within three-quarters of a mile from the main entrance of said manufacturing plant; that plaintiff (appellant) paid a fee of $35 and obtained a city license under the provisions of an ordinance requiring all persons operating on the streets of said city motor vehicles having a capacity of nine passengers or less, when used for the solicitation, carriage and transportation of passengers for hire, to have such licenses, unless such motor vehicles should be used exclusively as taxicabs, hearses, ambulances, hotel busses, railroad busses and sight seeing busses, operated from a garage or office, expressly upon call, by telephone or otherwise; that at the time of bringing suit, plaintiff was engaged in operating, under such license, a Ford

touring car with a seating capacity of five passengers, as he and many others had been doing for three years, for the solicitation and transportation for hire of passengers who desired to go along said named five streets, in either direction, but that the defendant city (appellee) threatened to arrest and punish by a fine and otherwise the plaintiff and other operators of such motor vehicles, if they should stop to take on or discharge passengers on Broadway, north of Third avenue, and near the entrance of said manufacturing plant, and would do so, and thereby destroy plaintiff's business, alleged to be worth more than $2,000, unless restrained by an injunction. It will be observed that the ordinance does not forbid jitney busses to drive upon the streets named, and appellant does not allege that he has been restrained in that matter, but only that appellees threaten to arrest him if he shall stop to receive or discharge passengers on Broadway. Appellant has assigned as error the ruling by which a demurrer was sustained to his complaint.

The contention that this ordinance violates the Constitution of Indiana is based in the first place upon the fact that it excepts street cars and taxicabs from 1. the "vehicles engaged in the carriage of passengers for hire" which are forbidden "to stop to take on or discharge passengers" at the places named. The difference between a street car operated on a railway track, under a franchise pursuant to which a large permanent investment has been made, and a Ford touring car used as a jitney bus, is obvious, and counsel for the appellant admit that they properly may be put in different classes. But it is urged that a taxicab may be and often is a Ford touring car, the same as appellant's "jitney bus," and that denying to appellant in the operation of his car the right to receive and discharge

passengers on streets where taxicabs have that privilege is a discrimination which makes the ordinance unconstitutional. The word "taxicab" has a well known and definite meaning. Vehicles which operate from a fixed station at which the drivers receive passengers or receive telephone calls directing them where the passengers will be found, and which drive to the destination of their passengers over any streets which are available for such travel, should not be classified with vehicles which drive back and forth along one street on which the traffic is heaviest, picking up passengers from the sidewalks, and pushing through where the crowds are greatest as affording the best prospect for obtaining fares. The mere fact that the same kind of vehicle may be used in each business does not control the classification. If appellant will use his car as a taxicab perhaps he may do so without violating the ordinance. It does not forbid the use of any particular kind of vehicle, but forbids making a certain kind of use of any vehicle whatever. The ordinance is not open to the objection that it arbitrarily classifies as different, two things which are essentially the same. *State, ex rel.* v. *City of Spokane* (1920), 109 Wash. 360, 186 Pac. 864; *Allen* v. *Bellingham* (1917), 95 Wash. 12, 163 Pac. 18; *Nolan* v. *Riechman* (1915), (D. C.) 225 Fed. 812; *Memphis* v. *State, ex rel.* (1915), 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B 1151, Ann. Cas. 1917C 1056; *Memphis St. R. Co.* v. *Rapid T. Co.* (1915), 133 Tenn. 99, 179 S. W. 635, L. R. A. 1916B 1143, Ann. Cas. 1917C 1045; *In re Cardinal* (1915), 170 Cal. 519, 150 Pac. 348, L. R. A. 1915F 850; *Thielke* v. *Albee* (1916), 79 Ore. 48, 153 Pac. 793; *Greene* v. *City of San Antonio* (1915), (Tex. Civ. App.) 178 S. W. 6.

The objection that the ordinance deprives appellant of property without compensation is unfounded. It

does not interfere with his right to pass over the
2. streets, and to do anything in the streets which
is incident to their use for purposes of public
travel. It only forbids the transaction of a designated
kind of public business in certain public streets. And
an individual who has engaged in the conduct of business in a highway, without obtaining a franchise to do
so, has no property in the right to continue doing it.

One who operates a vehicle over a fixed route along
a city street, and, to the capacity of the vehicle carries,
for hire any persons who may hail him from the
3. sidewalk and ask for passage, is a common carrier of passengers. *Desser* v. *City of Wichita*
(1915), 96 Kans. 820, 153 Pac. 1194, L. R. A. 1916D
246; *Peters* v. *City of San Antonio* (1917), (Tex. Civ.
App.) 195 S. W. 989; *Schott* v. *Weiss* (1918), 92 N. J.
Law 494, 105 Atl. 192.

A common carrier desiring to carry passengers on
the highway might establish stations for receiving and
discharging passengers on ground privately
4. owned, and drive his cars between stations upon
the streets and highways, notwithstanding this
ordinance. But not having done so, appellant has no
inherent right to select a street or streets for use for
purposes of loading and unloading passengers, and forbidding him to use certain streets for that purpose does
not invade his constitutional rights. *Ex parte Dickey*
(1915), 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840;
*Hadfield* v. *Lundin* (1917), 98 Wash. 657, 168 Pac. 516,
L. R. A. 1918B 909, Ann. Cas. 1918C 942; *Gill* v. *City
of Dallas* (1919), (Tex. Civ. App.) 209 S. W. 209;
*Peters* v. *City of San Antonio, supra; Lane* v. *Whitaker*
(1921), (D. C.) 275 Fed. 476. The ordinance is not in
conflict with the constitution.

But even though the legislature has power, under the
constitution, to authorize the enactment of such an or-

dinance, appellant insists that it has not done so, asserting that there is no statute which gives any such authority. The statutes relied on by appellee reads (in part) as follows: "Every city and town shall have exclusive power, by ordinance, to control and care for its streets, * * * and to prevent the obstruction or incumbrance of any such street * * * so as to impede the free use of the same for its proper purposes," etc. §8964 Burns 1914, Acts 1915 p. 383, §269. "The common council of every city shall have power to enact ordinances for the following purposes:

"(31) To prevent immoderate and careless riding or driving. To regulate the use of streets and alleys by vehicles, and to designate the kind of conveyances and vehicles that may not be used on certain named streets that have been improved, and designate hours for the use of such streets by certain specified classes of vehicles. To prevent the encumbering of streets * * * with * * * vehicles, horses or any substance or material whatever interfering with the free use of the same," etc.

"38. To license, tax and regulate public hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, bill posters and all other persons pursuing like occupations for pay or hire, and to prescribe their compensation, and revoke any license for violation of such ordinance."

"53. To carry out the objects of the corporation not hereinbefore particularly specified." §8655 Burns 1914, Acts 1905 p. 219, §53. And the statute which limits the power of the city over automobiles expressly excepts "motor driven commercial vehicles" from its operation, and contains a proviso that nothing therein contained shall be construed as affecting the power of a municipal corporation to enforce ordinances, rules and regulations affecting "motor driven commercial vehicles which are

used within their limits for public hire," or traffic regulations, except as to rates of speed. §10476d Burns 1914, Acts 1913 p. 779; §17. A large number of "jitney busses" driving rapidly along a much traveled street, stopping wherever convenient to receive and discharge passengers, might seriously "obstruct and incumber such street, so as to impede its free use for its proper purposes." In re Cardinal, supra; Memphis v. State, ex rel., supra; Desser v. City of Wichita, supra. And a due "regulation of the use of streets by vehicles" might demand that such "jitney busses" should turn out of the current of travel upon the side streets whenever they might stop to take up or set down passengers. Ex parte Dickey, supra; Puget Sound Tr. L. & P. Co. v. Grassmeyer (1918), 102 Wash. 482, 173 Pac. 504, L. R. A. 1918F 469; McGlothern v. City of Seattle (1921), 116 Wash. 331, 199 Pac. 457.

We think the power to enact and enforce such an ordinance, whenever necessary in the opinion of the common council, was clearly conferred by the statutes above quoted. §§8964, 8655 Burns 1914, supra; Peters v. City of San Antonio, supra. We cite below additional decisions of different courts upholding the power of cities to enact and enforce the ordinances therein under consideration for the control of "jitney busses" in the use of streets. Allan v. Bellingham, supra; Desser v. City of Wichita, supra; In re Cardinal, supra; Thielke v. Albee, supra; Ex parte Parr (1918), 82 Tex. Crim. App. 525, 200 S. W. 404; Gill v. City of Dallas, supra; Schoenfeld v. City of Seattle (1920), 265 Fed. 726, 731; Ex parte Bogle (1915), 78 Tex. Crim. App. 1, 179 S. W. 1193; Irwin v. Atlantic City (1917), 90 N. J. Law 99, 100 Atl. 565.

Appellant relies upon the case of Curry v. Osborn (1918), 76 Fla. 39, 79 So. 294. In that case the city had no express statutory authority in the matter, but

assumed to act under its implied powers as a city. The ordinance there under consideration forbade "jitney busses" to take on or discharge passengers "upon or along, or within 700 feet of any street * * * traversed by street car tracks over which street car service is maintained." The court said that such a regulation was "without any basis therefor in matters affecting public safety, health, morals, or welfare," and could not be upheld under the "general welfare powers" of the city. But in the later case of *State* v. *Stephenson* (1921), 81 Fla. 502, 89 So. 558, the same court held that statutory authority to "license * * * and regulate * * * jitney busses and other vehicles," and "to pass all ordinances necessary to the health, convenience, comfort and safety of the citizens," gave the city power to enact and enforce an ordinance requiring the drivers of all such vehicles to show themselves qualified and to obtain licenses and give bonds, and gave the city power to make "all reasonable rules and regulations governing the operation of automobiles for hire to safeguard the public." Though in that case the particular ordinance in question was held to be invalid, as requiring a continuing bond, unlimited in the total amount for which the sureties might become liable.

Those cases are clearly distinguishable from the one at bar, and we do not consider the question whether or not they were correctly decided.

The judgment is affirmed.