## Bell Bros. Trucking Co., Inc., v. Kelley, Police Judge.

April 18, 1939.

J. S. Sandusky, Judge.

782

KENNEDY & KENNEDY for appellant.

GLADSTONE WESLEY and CHRIS L. TARTER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Bell Brothers Trucking Company, Inc., of Lexington, Kentucky, was, on December 28, 1936, granted a certificate of convenience and necessity to operate a motor truck line from Lexington to Monticello, Kentucky, through the following counties: Fayette, Jessamine, Garrard, Lincoln, Wayne, McCreary and Pulaski. On August 14, 1933, the City of Somerset, a municipality of the fourth class, adopted the following ordinance:

"An Ordinance providing for the owning or acquiring of depots by all carriers of freight and passengers by motor vehicles and the regulation of travel, traffic and use of the streets, avenues, alleys, bridges and crossings by said carriers of freight and passengers, by motor vehicles in the City of Somerset, Kentucky, and providing for the punishment of violators thereof.

"Be it ordained by the Mayor and Board of Council in and for the City of Somerset, Kentucky:

"(1) Every person, firm or corporation owning, controlling, operating or managing motor vehicles for the transportation of persons or property for hire, into or out of the City of Somerset, Ky., shall own or acquire a depot or depots where all

said motor vehicles shall receive or/and discharge all their persons or property.

"(2) No person, firm or corporation shall own, acquire or operate such depot or depots as referred to herein until its location shall first be approved by the Mayor and Board of Council of the City of Somerset, Ky.

"(3) No person, firm or corporation owning, controlling, operating or managing motor vehicles for the transportation of persons or property into or out of the City of Somerset, Ky., shall operate said vehicles on any of the streets, avenues, alleys, bridges or crossings within the City of Somerset, Ky., except as may be designated or approved by the Mayor and Board of Council of the City of Somerset, Ky.

"(4) No person, firm or corporation owning, controlling, operating or managing motor vehicles for the transportation of persons or property into or out of the City of Somerset, Ky., shall receive or/and discharge their persons or property at any place or places within the City of Somerset, Ky., other than their regularly designated depots, except when or unless so authorized by the Mayor and Board of Council of the City of Somerset, Ky.

"(5) This Ordinance shall apply to,

"(a) Common carriers, and

"(b) Contract carriers

"(6) Any person, firm or corporation who shall violate any provision of this ordinance shall upon conviction in the police court of the City of Somerset, Ky., be fined not less than Twenty-Five ($25.00) Dollars, nor more than One Hundred ($100.00) Dollars for each offense.

"(7) The provisions of this ordinance are separable and if any of the provisions or penalties provided herein shall be held invalid, the decision of the court shall not affect or impair this ordinance as a whole, or any other part thereof.

"(8) All ordinances or parts of ordinances in conflict herewith are hereby repealed; and this ordinance shall take effect thirty (30) days after it is signed, recorded and published as required by law."

On September 2, 1937, the appellee, Ivan Kelley,

as police judge of the city of Somerset, issued warrants against the appellant's agents, J. H. Bell and David Correll, then in charge of and operating appellant's trucks over the streets of Somerset (lying along the route extending between its terminal points, as stated supra), charging them with violating the provisions of the city's ordinance in question, by unloading goods and delivering them to customers in that city without owning or obtaining the depot required by section 1 of the ordinance. Whereupon, this suit was brought in the Pulaski circuit court to test the validity of the ordinance and to obtain a writ prohibiting the city from prosecuting appellant for its charged violation of the ordinance and from issuing other warrants against it therefor, as threatened.

The trial court, being of the opinion that the ordinance was valid, sustained the city's general demurrer to the petition and petition as amended and dismissed it. From that judgment, the trucking company has appealed.

It contends, for reversal of the judgment, that the ordinance, both in its entirety and its every paragraph, is unconstitutional, because: (1) The ordinance is in conflict with subsections 42 and 79, Section 2739j, Kentucky Statutes; (2) section 2 of the ordinance interferes with interstate as well as intrastate commerce and attempts to confer arbitrary power upon the city's mayor and board of council, in giving them authority to select the location of the depot; (3) it imposes unreasonable restraints and regulations upon appellant's exercise of the rights conferred upon it by the certificate of convenience and necessity issued it; (4) it gives to the mayor and board of council arbitrary power to compel some persons to maintain a depot and to except and excuse others engaged in a similar business; and (5) section 3 of the ordinance gives the mayor and city council authority to designate which streets may be used by holders of certificates of convenience and necessity in the delivery of merchandise to their depots and deliveries from such depots to consignees.

From the above statement of the case, it is apparent that the sole question here before us for our decision is: Is the ordinance valid?

This ordinance was enacted by the board of council of the city of Somerset, a city of the fourth class, obvi-

ously in the exercise of the police power claimed given it under the provisions of its charter.

By Section 3490, Kentucky Statutes (charter of municipalities of the fourth class), the Legislature has granted to the board of council power within the city to pass ordinances "not in conflict with the Constitution or laws of this state or of the United States" (subsection 1) and "to license, tax and regulate * * * all kinds of vehicles" (subsection 15).

Its charter provision, Section 3560, Kentucky Statutes, in regard to the city's public ways, is as follows:

> "Public ways, as used in this act, shall mean all public streets, alleys, sidewalks, roads, lanes, avenues, highways and thoroughfares, and the same shall be under the exclusive management and control of the city * * *."

Further, by Section 3562, Kentucky Statutes, it is, in part, provided that:

> "The board of council shall have and exercise exclusive control and power over the streets, roadways, sidewalks, alleys * * * and highways of the city; to establish, open * * * close * * * and keep in repair the same; to prevent and remove all encroachments thereon or obstruction thereof * * *."

Clearly, it was under the authority conferred by the Legislature by these statutory provisions that the ordinance in question was enacted.

As stated in Town of LaGrange v. Overstreet, 141 Ky. 43, 132 S. W. 169, 170, 31 L. R. A., N. S., 951:

> "It will be observed that the statute vests large powers in the board of trustees, giving them wide discretion in the enactment of ordinances controlling and regulating the affairs of the town as well as the condition and improvement of its sidewalks, streets, and highways. But, extensive as this authority is, there is the limitation and restraint upon its exercise imposed by well-established principles of law, that it must not be used in an unreasonable, arbitrary, capricious or oppressive manner, or to gratify malice or ill will. If it is, the court will protect the citizen or class of citizens affected by this unauthorized assumption of power, and prevent by its process the municipal boards from acting with-

out the scope of their authority, or within the scope but in violation of the principle noted. But as the state has created these political subdivisions, and delegated to them a part of its sovereign power, to be exercised in the governmental affairs of the people composing the municipality, and has given the inhabitants the right to select from among their number citizens to administer their municipal and public affairs, it needs no argument to show that the acts of these representatives of the municipality in the performance of their public functions should not be controlled or interfered with unless it plainly appears that they are acting in an arbitrary, unreasonable, or oppressive manner or are influenced in their official conduct by improper motives, ill will or caprice."

See also City of Ashland v. Ashland Supply Co., 225 Ky. 123, 7 S. W. (2d) 833, 835, to like effect holding that:

"An ordinance which regulates the manner in which streets shall be used is valid, unless it is unreasonable and oppressive or is in conflict with state legislation upon the subject."

In harmony with this well-recognized principle of municipal self-government, so declared, it is a well-settled general rule that municipalities, where given the power to regulate the use of their streets, may enact valid rules and regulations for the government and regulation of motor vehicles within such cities.

The rule is thus stated in 19 R. C. L., page 800, section 108:

"A municipal corporation has no inherent power to enact police regulations, but derives it solely from the legislature, and consequently can exercise only such police power as is fairly included in the grant of powers by its charter."

Further, it is said in section 110 of the same text, page 803, that:

"A municipal police regulation must not infringe any rights guaranteed by the constitution of the state, since the legislature cannot grant a power which it does not itself possess. An ordinance enacted under legislative authority is considered the act of the state, and comes within the scope of the

fourteenth amendment to the federal constitution which prohibits any state from depriving any person of his life, liberty or property without due process of law. Accordingly, the power of a municipality to enact ordinances of a regulatory nature is subject to all the limitations which the fourteenth amendment [U. S. C. A. Constitution] and the similar provisions of the state constitutions impose upon the legislature of a state. Furthermore, an ordinance is not valid which conflicts with any statute of the state. A municipality cannot lawfully forbid what the legislature has expressly licensed, authorized or required, or authorize what the legislature has expressly forbidden."

Appellant contends that the ordinance in question is bad, because it violates this rule, in that its section 3 forbids it to use any of the streets of the city of Somerset, in operating its transportation business, as a common carrier, thereover (as authorized by its permit to do), except such streets as its mayor and board of council may designate for its use; that the right to use the state's public highways extending through the city of Somerset, as the term "highways" is defined by Section 2739j-42, means that it has the right to use any and all of the streets of the city, but notwithstanding the all-inclusive right given, the provision of the ordinance limits it, in derogation of this right, to the use of only such of its streets as its mayor and board of council may designate and that, by reason of the board's failure to designate same, an uncertainty exists as to the streets to be used.

However, it is to be noted that the ordinance does not attempt to prohibit a person, firm or corporation, owning and operating motor vehicles for the transportation of persons or property into and out of the city for hire, from operating its authorized carrier business through the city or using its streets as designated therefor, but that, only for the purpose of best regulating and harmonizing the authorized use of them by appellant with the welfare and safety of its citizenship, it reserves to its council the right, in the exercise of its official discretion, to designate such streets for its use as would least molest, interfere with or endanger the safety and convenience of its citizens' and the general public's like right to use the city's public highways and streets.

A somewhat similar question, involving the same legal principle, was presented in the case of Commonwealth v. Nolan, 189 Ky. 34, 224 S. W. 506, 507, 11 A. L. R. 202. In that case the appellee, Nolan, had been arrested and fined in the police court of the city of Harlan under a warrant issued therefor, charging him with violating an ordinance of the city confining the operation of all motor vehicles to one direction on a certain street or making of it a "one-way" street. Upon appeal from the judgment of the police court to the Harlan circuit court, a judgment of acquittal was rendered upon the ground that the ordinance was unconstitutional, because of its applicability to motor vehicles alone, which the court held made it discriminatory and oppressive upon that class of vehicles. Dissatisfied with that ruling, the commonwealth prosecuted an appeal for an authoritative declaration of the law of the case.

The court, in the course of its opinion declaring the law of the case and upholding the validity of the ordinance, said:

"While the introduction in recent years of automobiles and other motor vehicles as a means of conveyance and transportation, and the many injuries to persons and property from their use, has [have] resulted in a multitude of judicial decisions, many of them conflicting in expression and effect, the principles they announce are in the main but rules derived from the common law, or from statutory enactments specially designed to regulate their operation. The numerous cases on the subject seem to hold that, as motor vehicles are to be regarded as furnishing a suitable and convenient mode of travel and transportation, not necessarily inconsistent with the proper use of public highways by others, such highways are open to their use, as to other vehicles. But to this we would add that, as such vehicles have introduced a new element of danger to travelers on the highway, this fact necessarily compels a higher degree of care from those who operate them than is required of those in control of vehicles drawn by horses.

"While an automobile or other motor vehicle may not generally be regarded an inherently dangerous machine or agency, one court has said that— 'while in operation it (the automobile) should be

deemed a dangerous instrument, demanding great care on the part of the possessor.' * * *

"The Legislature of this state under its police power, has enacted a statute which regulates the manner of operating motor vehicles upon the highways of the state and streets of its cities, by requiring their owners to obtain of it a license and display the number of such license * * *. So it may be said that the Legislature of this state has exercised the power of regulation mentioned. In addition, it may be said that the Legislature of this state has duly conferred upon the municipal authorities of its cities and towns such powers as are necessary to regulate the use of their streets by motor vehicles; such authority as appertains to Harlan, a city of the fourth class, being conferred by Kentucky Statutes, Supp. 1918, Section 3562, which, among other things, declares that its city council shall have 'exclusive control and power over the streets, roadways, sidewalks, alleys,' etc., of the city. And this power the council has exercised and had the right to exercise by the passage of the ordinance in question. Certainly the power thus given by the statute, supra, in the absence of express or implied restrictions imposed by some other statute, which is not claimed, can leave no doubt of the right of the city council to pass the ordinance, and such an ordinance is a valid exercise of the police power for the protection and safety of the citizens. Christy v. Elliott, 216 Ill. 31, 74 N. E. 1035, 1 L. R. A., N. S., 215, 108 Am. St. Rep. 196, 3 Ann. Cas. 487; People v. Schneider, 139 Mich. 673, 103 N. W. 172, 69 L. R. A. 345, 5 Ann. Cas. 790. * * *

"Indeed, the right of the state or municipality to regulate the operation of motor vehicles may be said to be universally recognized, and that this must be done, by putting them in a class in which other vehicles are not included, arises out of the new elements of danger peculiar to their structure, mechanism, and use. Objection to the constitutionality of such state or municipal regulation, on the ground that it is class legislation or discriminatory in its operation, has repeatedly been declared to be without merit. State v. Mayo, 106 Me. 62, 75 A. 295, 26 L. R. A., N. S., 502, 20 Ann. Cas. 512; Fifth Avenue Coach Co. v. New York, 194 N.

Y. 19, 86 N. E. 824, 21 L. R. A., N. S., 744, 16 Ann. Cas. 695. * * *

"In Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513, it was held that a municipal corporation might, by ordinance, exercise the power delegated by the Legislature—'to make special regulations * * * as to the use of automobiles and motorcycles on particular roads, including their complete exclusion therefrom; it being a valid exercise of the police power.' "

Appellant, while appearing to recognize both the need and the right of the city of Somerset, in the exercise of its police power delegated to it by the Legislature, to enact regulatory ordinances governing the use by motor vehicles of the streets within the city, yet contends that its charter right of "exclusive control and power" over its streets did not authorize it to enact an ordinance that conflicts with the state law, which it claims section 3 of the ordinance does by confining its use of the streets to only such ones as its city council may designate.

Conceding that appellant's certificate of convenience and necessity issued it by the state department of motor transportation did authorize it as a common carrier, in conducting its transportation business, to use the highways of the city of Somerset and that "public highways" are by Section 2739j-42 of the Motor Vehicle Law defined as being "every public street, alley, road or highway in this State, whether within or without the corporate limits of any municipality," it is yet not our view that it was the legislative intent, in so defining "public highways" in its general Motor Vehicle Law, to thereby revoke the charter given right of municipalities to exclusively control and regulate the use of the streets and highways within their limits.

A further provision of the Motor Vehicle Law (Section 2739j-28) appears to confirm our conclusion in its provision that where holders of certificates of convenience and necessity have complied with all the provisions of the state law and paid the fees thereby required, "all local, municipal and state license fees now in force shall cease to be operative as to them * * *, *except the municipalities and other local subdivisions may make reasonable local police and traffic regulations subject to any*

*and all state traffic regulations within their boundary, not inconsistent with the provisions of this act.*" (Italics ours.)

This excepting provision of the section clearly manifests, we conceive, the purpose and intention of the Legislature, which had given to municipalities the exclusive control of the streets within their limits, not to infringe upon or derogate from such regulatory right and authority given them.

Further appellant complains that the ordinance is invalid, because it confers the arbitrary power upon the council to choose the site of the depot required by section 1 of the ordinance and also to designate the streets which the appellant carrier is to use in conducting its freight transportation business through the city.

As to such criticisms made, it is also our view that the same are untenable, even though the ordinance may be regarded as conferring upon the municipal authorities a very large measure of discretion in administering its provisions. However, the acting authorities of the city are not to be regarded as having been thereby vested with personal or arbitrary power, but as restrained in its exercise, in that such discretionary power given them is subject to the control of the courts, when it appears that, in its exercise, they have acted arbitrarily in the premises and have abused the public trust reposed in them to properly and fairly administer the provisions of the ordinance. In the administration of the duties imposed upon them by such terms of the ordinance, municipal authorities can not make discriminatory use of the discretionary powers given them, by granting privileges to certain individuals and arbitrarily denying them to others applying therefor under like circumstances and conditions. Where such arbitrary exercise or abuse of the police power given a municipality is attempted, the offending authorities may be compelled by mandamus to grant the right or permit, reasonably and properly applied for by one showing himself entitled thereto. Reetz v. Michigan, 188 U. S. 505, 23 S. Ct. 390, 47 L. Ed. 563.

This legal principle, compelling like and equal treatment by municipalities of all like applicants, is thus stated in McQuillin on Municipal Corporations, 3rd edition, section 1105, page 491:

"Even conceding broad discretion in the public au-

thorities, when the elements of discretionary action have been eliminated by acts of the parties, the question resolves itself into one of legal duty, which may be enforced by mandamus.''

As further said in section 1090 of the same text, page 458:

''The power 'to regulate' is not usually construed as conferring power to prohibit, unless in exceptional cases where it is necessary to be exercised as a police power, in order to preserve the public health, morals, safety or general welfare.''

But, as stated supra, the ordinance in question does not attempt to prohibit the appellant from operating its transfer business through the city of Somerset, but only directs that in the conduct of its common carrier business through the city, it shall use such streets as the council may direct used therefor and shall maintain a depot at a site approved by the mayor and council, at which it shall discharge and take up freight.

In passing upon the validity and reasonableness of this ordinance, we may here well consider what is the status of appellant and whether it has the right to here demand not only the right to prosecute its business through the city over a thoroughfare designated by it, but the untrammeled right to use all its streets, nolens volens, despite the regulatory provisions of the city's ordinance, passed in its discretion as a necessary and proper exercise of its police power or governmental function for preserving the public health, safety and general welfare, by restricting its use to streets designated by the board of council.

As said in the case of Scott v. Hart, 128 Miss. 353, 91 So. 17, 19:

''There is a vast difference between the rights of a citizen to travel upon the highways and transport his property over them in the ordinary course of life and business and the right or privilege of one who uses the highway for his place of business and private gain. The rule is thus well stated in Huddy on Automobiles (5th Ed.) p. 193, section 153:

'' 'The former (referring to the right of a citizen to use the highway) is the usual and ordinary right of a citizen, a common right, a right common

to all, while the latter (taxicab driver for hire) is special, unusual and extraordinary. As to the former the extent of legislative power is that of regulation, but, as to the latter, its power is broader, the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature.' "

In the Scott case, supra, there is further quoted the following from the well-reasoned opinion of the Supreme Court of Washington delivered in the case of Hadfield v. Lundin, 98 Wash. 657, 168 P. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942:

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege, and not as a matter of natural right."

See also the cases of Star Transp. Co. v. Mason City, 195 Iowa 930, 192 N. W. 873 and Frick v. City of Gary, 192 Ind. 76, 135 N. E. 346.

Upon such distinction the legal principle is based, as stated in McQuillin on Municipal Corporations, Section 993, page 242, that "the business of operating motor buses for hire may be limited as to street and routes," the note thereto citing Village of Perrysburg v. Ridgway, 108 Ohio St. 245, 140 N. E. 595 and also Frick v. Gary, 192 Ind. 76, 135 N. E. 346. Further, in section 994 of the same text, page 243, it is stated that:

"It is entirely competent for the legislature to prohibit automobiles from passing over designated streets or public highways. And an ordinance passed by virtue of express legislative power closing to the use of automobiles certain public streets was sustained in Maine against the contention that it was unconstitutional, being in violation of the

**794**

Fourteenth Amendment of the Constitution of the United States [U. S. C. A.]."

Having weighed and considered the provisions of the ordinance in question and the grounds urged in support of appellant's contention that the ordinance is in whole and in all its paragraphs invalid, we are led to conclude that the same are not well taken nor can we concur therewith.

We are, therefore, of the opinion, as was the view of the learned trial judge, that, when considering the object of the ordinance, the police power vested in the city to enact such regulatory ordinances of the motor vehicle use of its streets as it deemed advisable and called for in the protection of the interest and welfare of its citizens, the ordinance itself is not to be construed as being "in conflict with the Constitution or laws of this state or of the United States," or as conferring arbitrary power upon the board of council, nor do we consider that they have abused the power conferred upon them. Therefore, it is our conclusion that the judgment should be and it is affirmed.