## J. A. HERRING v. STATE.

No. A-8995.   Nov. 25, 1936.
Rehearing Denied Feb. 12, 1937.
(64 Pac. [2d] 921.)

450

F. E. Riddle and Geo. B. Torristo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen. (C. D. Cund and A. L. Herr, Attys., of Oklahoma Tax Commission, of counsel), for the State.

EDWARDS, P. J. Plaintiff in error, hereinafter called defendant, was convicted in the court of common

pleas of Oklahoma county of operating a motor vehicle on the public highways without having obtained a permit from the Corporation Commission, and was fined $750.

Defendant is charged with a violation of section 3711, Okla. St. 1931, as amended by section 6, c. 156, Session Laws 1933. The charging part of the information is:

"That * * * said defendants * * * while acting conjointly and together, wilfully, unlawfully and wrongfully operated a certain motor vehicle * * * as a 'Class B' motor carrier, by carrying for hire and compensation three passengers, to wit: Mr. and Mrs. R. W. Felix to Davis, Oklahoma, at the rate of $2.50, Miss L. M. Wells to Dallas, at the rate of $2.75, over a public highway, to wit: Highway '77,' said defendants being engaged in the inter-city business, their destination with said passengers on said highway being Davis, Oklahoma, and Dallas, Texas, and various other points, without having obtained a license from the State Corporation Commission. * * *"

Motor carriers are defined and classified as A, B, and C carriers. Section 3700, Okla. St. 1931, as amended, by Laws 1933, c. 156, § 1 defines class A and B carriers as follows:

"(1) Class 'A' motor carriers shall include all motor carriers operating as common carriers, of persons or property between fixed termini or over a regular route, even though there be periodic or irregular departures from said termini or route; and

"(2) Class 'B' motor carriers shall include all other motor carriers not operating as Class 'A' or 'C' motor carriers, whether as private carriers for hire or common carriers for hire, of persons or property."

Class C motor carriers not being involved, it is unnecessary to quote definition. Section 3704 of said act, as amended by Laws 1933, c. 156, § 2, provides for the pro-

curing a permit to operate as a carrier on the public highways from the Corporation Commission. Section 3706 forbids the operation of a class B motor carrier without having obtained permit. Section 3707, as amended by Laws 1933, c. 156, § 3, provides for the payment of a highway tax by class B motor carriers. Section 3711, as amended by section 6, c. 156, Laws 1933, provides in substance that every person who aids or abets in the violation of said motor vehicle act is guilty of a misdemeanor and is punishable by a fine not exceeding $1,000.

The state introduced evidence that defendant Herring operated a travel bureau in Broadway Central Hotel and there made arrangements for the transportation of passengers to various points; carried advertising to enable him to make contacts and charged a fee of prospective passengers; arranged with drivers of motor vehicles to transport the passengers so contacted to various places. At the time charged, for the purpose of procuring evidence, officers arranged with a Miss Wells to procure, through defendant Herring, transportation to Dallas, Tex. She paid defendant 75 cents and he informed her the driver would call for her at her hotel and that she would pay the driver $2 for her transportation to Dallas. About the same time, R. W. Felix and wife arranged with defendant for transportation to Davis, Okla., for a charge of $2.50. Soon after such arrangements, codefendant Rippey took his passengers, Felix and wife, and Miss Wells, in the car he was driving, and as he was leaving Oklahoma City, was arrested. This transaction is the basis for the charge in this case. The automobile driven by Rippey belonging to some person at El Paso, Tex. It bore a California license tag. None of these parties had a permit from the State Corporation Commission. The charge against Rippey was dismissed, and this defendant Herring

alone was put on trial. The testimony for the state is rather full along the line indicated. There is evidence tending to show that defendant Rippey was a regular driver in transporting passengers for other travel bureaus and had carried passengers previously under arrangements with defendant. Defendant did not take the stand and offered no testimony.

Defendant has assigned numerous errors, but in his rather full and carefully prepared brief makes only two contentions. First: That the testimony is insufficient to support the judgment. Second: That the statute, as applicable to defendant, is unconstitutional and is in conflict with the Fourteenth Amendment to the Federal Constitution, and section 7, art. 2 of the state Constitution.

Disposing of the first contention, the evidence in substance, as we have stated in part, is that Rippey was engaged in transporting passengers for hire over the highways of this state in an automobile owned by another in Texas and bearing a California license tag; that defendant Herring was conducting a travel bureau; that he contacted passengers as stated and contracted with them for transportation to intrastate and interstate points. That defendant Herring fixed the rates to be charged, the place where passengers would take the conveyance, and for the payment of fare; that Rippey was in fact a private carrier of passengers for hire. The evidence and the inferences arising therefrom bring Rippey within the definition of class B motor carriers and in the instance alleged he was assisted and aided by defendant Herring.

Under the second assignment counsel contends that defendant Herring did not own nor operate any car nor represent, abet, aid, arrange for, or procure passengers for any person, firm, or corporation, engaged in the busi-

ness of transportation of passengers for hire, but that all he did was to maintain a desk in a hotel and to advertise he would furnish information to private owners of privately driven automobiles on personal and private business or for pleasure and was instrumental in bringing together such owners and prospective passengers in order that they might make arrangements as cotravelers; that in the instant case defendant did give information to the witness Wells and to Felix and wife, charging a commission for his services; that such acts are not a crime; that Rippey was lawfully in possession of the car with a California tag thereon; that he was not a carrier of passengers for hire within the meaning of the motor vehicle law nor a public or private carrier, but was merely conveying share expense guests; that he was not within the prohibition of any valid provision of the motor vehicle law.

Defendant cites Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264, and Frost & Frost Trucking Co. v. Railroad Comm., 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457, in support of his contention. The Cahoon Case holds the Florida statute unconstitutional as to a private carrier for the reason the putting the same burden on a private carrier as on a common carrier was beyond the power of the state, and that as the regulations applicable to a common carrier and to a private carrier were not distinguished and as to private carriers they were void for uncertainty.

The Frost Case arose in California under the automobile law of that state. It is predicated on the proposition, first, that the state statute construed was not for the regulation of the state highways, but was a regulation of the business of those engaged in using the highways with the primary purpose of protecting the common carrier from competition; second, that the statute in effect

converted a private carrier, against his will, into a common carrier and required him to assume the burdens of a common carrier.

In Stephenson et al. v. Binford et al., 287 U. S. 251, 53 S. Ct. 181, 185, 77 L. Ed. 288, 87 A. L. R. 721, which case arose under the Texas Motor Carriers Act (Vernon's Ann. Civ. St. Tex. art. 911b, § 1 et seq.) the court discussed and distinguished the Cahoon Case, supra, and the Frost Case, supra. The court said:

"The question decided in Frost & F. Trucking Co. v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457, differs entirely from that here presented. There (page 592 of 271 U. S., 46 S. Ct. 605) the California Supreme Court (Frost v. Railroad Comm., 197 Cal. 230, 240 Pac. 26) had construed a provision of the state statute which required the private contract carrier to obtain, not a permit, as here, but a certificate of public convenience and necessity before doing business over the state highways, as a condition obliging him to dedicate his property to the business of public transportation and to subject himself to all the duties and burdens imposed by the act upon common carriers. This court, in accordance with the settled rule, accepted that construction as binding and, in that view, said (page 592 of 271 U. S., 46 S. Ct. 605, 606):

" '* * * The case presented is not that of a private carrier, who, in order to have the privilege of using the highways, is required merely to secure a certificate of public convenience and become subject to regulations appropriate to that kind of a carrier, but it is that of a private carrier, who, in order to enjoy the use of the highways, must submit to the condition of becoming a common carrier and of being regulated as such by the Railroad Commission. The certificate of public convenience, required by section 5, is exacted of a common carrier, and is purely incidental to that status. The requirement does not apply to a private carrier qua private carrier, but to him only

in his imposed statutory character of common carrier. Apart from that signification, so far as he is concerned, it does not exist.'

"On the contrary, the Texas statute in respect of permits deals exclusively with the private contract carrier, and requires the issue of the permit not to him in the imposed character of a common carrier, but in his actual character as a private contract carrier. If the California statute requiring a certificate had been thus interpreted by the highest court of the state, the foregoing quotation clearly suggests that our decision might have been otherwise.

"Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264, dealt with a Florida statute indiscriminately applying to all who operated motor vehicles for compensation or as common carriers over public highways, and prohibiting such operation without a certificate of public convenience and necessity, application for which was to be accompanied by a schedule of tariffs. No certificate was valid unless a bond were given by the applicant for protection against injuries resulting from negligence, and for the protection of persons and property carried. The Railroad Commission was vested with authority to fix or approve rates, regulate service, prescribe methods of keeping accounts, etc. Schedules of rates were to be open to the public, and all alterations in tariffs were under the commission's control. The violation of any provision of the act was made a misdemeanor punishable by fine or imprisonment or by both. This court held that, since the statute affixed the same conditions to all who applied for certificates, and embraced in those conditions a scheme of supervision and control which constitutionally could be applied only to common carriers, a private carrier for hire could not constitutionally be arrested under it for failure to procure a certificate or pay the tax required by the act. It further held that, if the statute were regarded as intended to afford one constitutional scheme for common carriers and another for private carriers, it failed to define the obligations of private carriers with the certain-

ty required of criminal statutes, and was therefore void; and that this defect was not removed by a decision of the state court declaring the provisions separable, and that only those legally applicable to private carriers were intended to apply to them, without also deciding which provisions were so applicable. 'No separate scheme of regulation,' we said (page 563 of 283 U. S., 51 S. Ct. 582, 585), 'can be discerned in the terms of the act with respect to those considerations of safety and proper operation affecting the use of highways which may appropriately relate to private carriers as well as to common carriers.' "

At page 271 of 287 U. S., page 187 of 53 S. Ct., 77 L. Ed. 288, 87 A. L. R. 721, the court further said:

"The requirement of the Texas statute under attack that contract carriers must have a permit with the prerequisites in the statute for such a permit, is reasonable, particularly in that this method enables the state to know who will use its highways and to more efficiently regulate such use. The permit system has immediate relation to the condition of the roads and bridges, congestion of the highways and the character of equipment to be used, which relates not only to the effect of the operations on business but also to the problem of safety and convenience in use of the highway."

Since our statute, section 3700, Stat. 1931, as amended by Laws 1933, c. 156, § 1, supra, by its terms defines and is made applicable to private carriers as such, then under the holding of the court in Stephenson Case, our statute is a valid exercise of the power of the state in regulating the use of the state highways.

We are satisfied the state is without power to forbid or to make criminal the act of carrying of one or more persons as a special undertaking or single transaction, on a share expense basis or for hire by an owner or driver of a motor vehicle. That is to say, if an owner or driver of a motor vehicle shall desire to drive to another point

within or beyond the boundaries of the state and for such trip shall make arrangements to take other persons with him on a share expense basis or for a fixed charge, his act would not be unlawful for such purpose. But where the undertaking is a business or part of a business or where he proposes to carry all persons indifferently who choose to employ him, he becomes a carrier within the terms of the statute. In such case he is engaged in a business which the state may regulate and control.

In these modern days, the congestion of traffic of the highways, the enormous number of accidents with the great toll of death and injuries make restrictive regulation of the use of the highways imperative and has tended to make more liberal the decisions of the courts in upholding state legislation on the subject.

For the reasons assigned, the case is affirmed.

DAVENPORT and DOYLE, JJ., concur.