## JACK HERRING v. STATE.

No. A-9597.   Oct. 20, 1939.
(95 P. 2d 128.)

J. Q. A. Harrod and Laynie W. Harrod, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant, Jack Herring, was charged jointly with Virgil Crane of the crime of operating a motor vehicle upon the public highway for transportation of passengers for compensation, without first obtaining from the Corporation Commission a permit.

The information charged that on the 26th day of March, 1937, in Oklahoma county, the said defendants, acting conjointly and together, did then and there willfully, unlawfully and wrongfully operate a certain motor vehicle, to-wit: a V-8 Model Ford automobile, 1935, as a class "B" motor carrier, by carrying as a private carrier for hire and compensation three passengers, to wit: Allen Parks, Mack Lawrence and Omer Stringer, over a public highway; the said defendants being engaged in intercity business, their destination with said passengers on said highway being Tulsa, Okla., without first having obtained from the State Corporation Commission of the state of Oklahoma a permit, as required by law.

Upon his separate trial the jury returned a verdict finding "the defendant Jack Herring guilty as charged in the information herein and assess the punishment at a fine of $1000.00."

Motion for new trial was denied October 1, 1938; thereupon the court rendered judgment and sentence in accordance with the verdict.

The questions involved in this appeal, with the exception of two, are the same as those which arose in the appeal in Herring v. State, 60 Okla. Cr. 449, 64 P. 2d 921, wherein the judgment was affirmed and wherein appellant's petition for writ of certiorari to review the judgment of this court was by the Supreme Court of the United States, on June 1, 1937, denied. Herring, Petitioner, v. State of Oklahoma, 301 U. S. 704, 57 S. Ct. 937, 81 L. Ed. 1358.

The principal ground for a reversal is that the verdict is not supported by the evidence.

The state relied for this conviction upon the testimony of four witnesses.

Allen Parks testified that he knew Jack Herring and Virgil Crane, the other defendant; that on February 26, 1937, he saw Jack Herring at the Broadway Central Hotel and paid him $2.50 for his transportation to Tulsa. In the course of his conversation Jack Herring said: "You see that boy sitting over there? As soon as he gets a load he will be ready to go." That he and four others got into the car. It was a V-8 Ford car, and drove out to 23rd and Eastern and turned north on Eastern. An officer stopped the car and brought the party to the courthouse. On the windshield of the car were letters three inches high in capitals, C. C. and N. O. after them.

On cross-examination he admitted that he had been convicted in Oklahoma county of a felony and served the term.

John Adams, deputy sheriff, testified that he knows Jack Herring and Virgil Crane; that on February 26, 1927, he saw Herring and Crane at the Broadway Central, and Allen Parks was talking to Jack Herring and gave Herring some money, then came out and got into a car;

that he followed the car north on Robinson and east on 23rd to Eastern and stopped the car; that Virgil Crane is operator of a travel bureau, runs the car regularly and hauls passengers for hire; that he saw him two or three times at Jack Herring's, who has a sign out in front that says: "Travel Bureau", and rates to El Paso, St. Louis, and Los Angeles; that in the presence of Jack Herring, Allen Parks told him that he was going to Tulsa.

Ross Pierce, deputy sheriff, testified that he was with Officer John Adams when they arrested the party and brought them to the county attorney's office.

C. W. Evans testified that he was an employee of the Corporation Commission; that he had carefully checked the Corporation Commission records in the office of Motor Carrier Permits, and that there is no record of a motor carrier permit of any kind shown to have been issued to Jack Herring or Virgil Crane; that his department requires a permit number to be placed or displayed on the windshield of each vehicle so used in letters C. C. and N. O. at least three inches high; that Class B authorizes transportation of passengers over various irregular routes at any time that the independent contractor arranges for transport.

The defendant took the stand as a witness in his own behalf, and testified that about a year ago or such a matter he was convicted on a charge of operating a motor vehicle for hire without a permit, and at that time there were four or five cases pending against him and he paid a dollar fine in some of them; that since that time he has changed his method of doing business; that he heard Allen Parks' testimony, and remembers what happened on that occasion; that Mr. Parks wanted to go to Tulsa, and he told him he did not have any one he knew of going to Tulsa. Mr. Crane came in and said he was going to Tulsa, and

he introduced Mr. Parks to Mr. Crane. That Mr. Parks never paid him for anything; that he knew Mr. Crane lived in Tulsa, and that was the only time he had any transaction with Mr. Crane. Asked:

"Q. What would you charge him if he was going to Tulsa? Or, charge me? If I was going to Tulsa and called you up? A. Just various prices. I do not make no certain price. Q. Would you select me the transportation? A. Not always. I might. Q. What did you start to say? A. Just like you tell me, say, you come along and say you give so much to go some certain place and I say here is a man will give seventy-five cents, or a dollar; and if you want to give me part of it—that is the way it works out—if he is going to charge him a dollar, or dollar and a half, maybe he gives me part of it. No certain commission and no certain charge anywhere."

His cross-examination was in part as follows:

"Q. What does your advertisement say? A. Well, you have to have—have to show me that you are equipped and capable of taking care of someone. Q. What did Virgil Crane show you? A. V-8. Q. And is that all he had to do? A. Had to show me a nice car and owned by yourself. I might not have seen him before, but I knew Virgil. Q. How many times have you been convicted of operating a travel bureau illegally? A. Once. Q. You had an ad in the paper this week, didn't you? A. Yes, sir. Q. Well, now, just answer the question, please sir. How many times have you been convicted of violation of the prohibitory laws of the state of Oklahoma. A. Three or four times. Q. How many times can you remember, in the federal court? A. Twice. Q. What was that conviction in Denver? A. Conspiracy. Q. What for? A. Conspiring to beat the bus company out of passengers. Not for running a travel bureau. Q. Then you say eight times in the state? A. Yes. Q. Two by the federal court? A. Yes. Q. That makes 16 cases. Now, what about this federal conspiracy? A. One. Q. 17 cases, all right. A. That is at least 17. Q. How did you happen to be so good to Mr. Parks? A. Well, I told Mr. Crane, I said, "There is a

man going to Tulsa, you take whatever you want to off of him.' "

Counsel for appellant in their brief say:

"We submit that there is no competent evidence in this case to prove that Virgil Crane was operating as a class 'B' Carrier over the highways of Oklahoma, in violation of law, and until the state proves, by competent evidence that the codefendant, Virgil Crane was operating his said automobile, in violation of law, the defendant, Jack Herring, could not be convicted of the crime charged; that is, of aiding and assisting Virgil Crane in such violation."

In our opinion, from all the facts in evidence, including certain admissions of inculpatory facts, as shown by appellant's testimony as a witness in his own behalf, it is evident that the defendants, Herring and Crane, were acting in concert with a common purpose and interest in the commission of the crime charged.

Motor carriers are defined and classified as A, B, and C carriers. Section 3700, Okla. St. 1931, as amended by Laws 1933, c. 156, sec. 1, 47 Okla. St. Ann. § 161.

Subdivision (b) (2) defines class "B" as follows:

"Class 'B' motor carriers shall include all other motor carriers not operating as class 'A' or 'C' motor carriers, whether as private carriers for hire or common carriers for hire, of persons or property."

Section 3704 of said act, as amended by Laws 1933, c. 156, sec. 2, 47 Okla. St. Ann. § 165, provides for procuring a permit to operate as a carrier on the public highways from the Corporation Commission. Section 3706, 47 Okla. St. Ann. § 167, forbids the operation of a class "B" motor carrier without having obtained permit. Section 3711, as amended by section 6, c. 156, Laws 1933, 47 Okla. St. Ann. § 172, provides in substance that every person who aids

or abets in the violation of said motor vehicle act is guilty of a misdemeanor and is punishable by a fine not exceeding ($1,000) one thousand dollars.

All persons aiding or abetting in the commission of a misdemeanor are principals, and may be so charged in the information.

The fact that codefendant, Crane, was operating said motor vehicle upon the public highway as a class "B" carrier without a permit in violation of law, is shown by the uncontradicted testimony of the witness Evans.

It is the province of the jury to determine questions of fact and decide between conflicting inferences, and the duty of this court to interfere arises only when it can see that the verdict is contrary to the evidence, or appears to have been influenced by passion or prejudice.

We think the evidence, without any doubt, is amply sufficient to sustain the verdict.

Complaint is also made of the action of the court in giving certain instructions to the jury, and in refusing to give one requested on behalf of appellant.

This court has repeatedly held that the instructions must be considered as a whole. The instructions given fully and correctly state the law applicable to the facts in this case, and we find no error in that particular.

After consideration of the entire record, the conclusion is reached that no error was committed on the trial prejudicial to the rights of appellant. It is the opinion of the court, therefore, that the judgment of the lower court should be affirmed. It is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.