# CADILLAC BOOTH v. STATE.

No. A-10141.   May 12, 1943.

(137 P. 2d 602.)

Robert Burns, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Cadillac Booth, was charged in the court of common pleas of Oklahoma county with operating a motor vehicle upon a public highway for transportation of passengers for compensation without first having obtained from the Corporation Commission a permit; was tried, convicted and sentenced to pay a fine of $1,000, and has appealed.

For reversal of this case it is urged:

1. That the evidence is wholly insufficient to show that the defendant has violated any law.

2. That the court erred in allowing the county attorney to cross-examine defendant as to commission of other offenses.

This is another in the series of travel bureau test cases which this court has had to consider. In all of the cases which we have reviewed, there has been some difference in the manner of operation of the various defendants, but so far, in all of the cases including the instant case, the fundamental method of operation has been identical.

To support the allegations of the information the state introduced the following proof:

Collier Hendricks, chief clerk in the Motor Carrier

Division of the Corporation Commission, testified that neither the defendant, nor H. B. Edwards, the codefendant, nor the AAA nor AAAA Travel Bureau, had been issued a Class B motor carrier permit, or any other kind of permit, by the Corporation Commission. He explained the showing of convenience and necessity which would have to be made by an applicant in order to secure a permit, and further explained that a metal identification plate is issued for each piece of equipment for each class of motor carrier indicating the class of carrier to whom it is issued. He further testified that if the Commission acts favorably upon the application that the applicant is required to file public liability and property damage protection in an amount based upon the seating capacity of the carrier.

Roy Bennett testified that on October 30, 1940, he went to the travel bureau operated by defendant in the Brown Hotel. The conversation had with the defendant on that occasion was as follows:

"Q. (By Mr. Daugherty, Asst. County Attorney) Tell us about that conversation? A. Well, he asked where I wanted to go and I told him to 'Bakersfield, California' and he said he didn't think he had a car to Bakersfield that day but he had one to Los Angeles and I asked him how much it would be and he said $12.50 to Bakersfield or $10 to Los Angeles and he said I could pay the $12.50 if I wanted to and that would buy me a ticket from Los Angeles to Bakersfield. Q. Did he tell you what the ticket would be on? A. What kind of car? Q. Yes? A. No. I asked him what kind of car. I told him I didn't want to ride in a jallopy and that I wanted good transportation and he said that he had two Mercury Eights on hand, or setting out in front, but he didn't know whether one of them was going or not; but that it would be a good late model car. Q. Did you start on the trip? A. Yes, sir. Q. Who did you pay the money to? A. I paid $5.00

to Mr. Booth. Q. Did you pay anybody else? A. And I paid the driver $5.00. Q. Who was the driver? A. A fellow named Edwards, I believe. H. B. Edwards."

He further testified that the defendant took him and two other passengers from the Brown Hotel to Southwest 29th street and May avenue in Oklahoma City and that they there transferred to the Edwards car. That each of them there paid in the defendant Booth's presence the balance due on their fare. That Booth told the driver that two of them were going to California and the third man to Albuquerque, N. M. They were stopped at Anadarko, the driver arrested and returned to Oklahoma City.

S. D. Anderson testified that he was employed as a special agent by the Union Bus Station. That he was familiar with defendant's business. That it was formerly known as ABC Travel Bureau, but that he had put up a new sign which read "AAAA Travel Bureau." That he had taken one trip with them for the purpose of learning their method of operation. That their fees varied according to the distance the car would have to travel. That defendant has an office with two telephones. That he gets calls from parties who want to go to different places and the defendant tells them what the fare will be, and if they desire to go he sends a private car out after them and then transfers them to the car which will transport the passengers to their destination. He admitted on cross-examination that he had had a difficulty with the defendant in which he had struck defendant with his fist after the witness had arrested defendant west of El Reno for speeding.

The defendant testified in his own behalf that he was not engaged in the transportation business, but that he was merely engaged in selling information or service to individuals who desired to travel across the country

and were willing to share expenses with another driver. He specifically denied everything related by the witness Bennett which incriminated him in any way. On cross-examination the defendant admitted many convictions for violations of the law, most of them being convictions for violation of the prohibitory liquor laws. He admitted pleading guilty to a violation of the statute under which he is charged in the instant case.

We think we have heretofore in several cases made a sufficient statement of the law pertaining to the so-called travel bureau business, so that there should no longer be any confusion in the mind of those who are desirous of engaging in that business as to when they come within the prohibition of the statute. Herring v. State, 60 Okla. Cr. 449, 64 P. 2d 921; Herring v. State, 68 Okla. Cr. 32, 95 P. 2d 128; Hall v. State, 68 Okla. Cr. 367, 99 P. 2d 163; Hall et al. v. State, 68' Okla. Cr. 451, 99 P. 2d 166; Hudgins v. State, 75 Okla. Cr. 446, 133 P. 2d 231.

In many ways the case herein is stronger than the proof of the state in some of the above cases.

In Herring v. State, supra, 60 Okla. Cr. 449, 64 P. 2d 921, 924, it is stated:

"We are satisfied the state is without power to forbid or to make criminal the act of carrying of one or more persons as a special undertaking or single transaction, on a share expense basis or for hire by an owner or driver of a motor vehicle. That is to say, if an owner or driver of a motor vehicle shall desire to drive to another point within or beyond the boundaries of the state and for such trip shall make arrangements to take other persons with him on a share expense basis or for a fixed charge, his act would not be unlawful for such purpose. But where the undertaking is a business or part of a business or where he proposes to carry all persons indiffer-

ently who choose to employ him, he becomes a carrier within the terms of the statute. In such case he is engaged in a business which the state may regulate and control.

"In these modern days, the congestion of traffic of the highways, the enormous number of accidents with the great toll of death and injuries make restrictive regulation of the use of the highways imperative and has tended to make more liberal the decisions of the courts in upholding state legislation on the subject."

For a discussion of the applicable part of the Motor Carrier Act here involved see 47 O. S. 1941 § 161 et seq. Hudgins v. State, supra.

The case for the prosecution depends entirely upon whether the defendant is guilty of aiding or abetting a private carrier for hire. If the private carrier has violated no law, then, of course, the defendant could not be guilty as his guilt rests in the fact that he participated by aiding and abetting a private carrier for hire.

An excellent brief has been filed in behalf of defendant and there is considerable merit to the contentions that he makes. Those authorities and the argument presented would be applicable if the proof had shown that defendant was merely furnishing information to cross-country travelers for a fixed fee, irrespective as to whether the party seeking the information was successful in coming to terms with the driver of the private automobile traveling across the country. But the proof here goes far beyond that. The defendant himself and not the driver of the private automobile fixed the rate to be charged. His fee was one-half of the fare paid by the passenger, which fare was determined solely by the distance to be traveled. A prospective passenger could call over the telephone and the defendant would instantly tell him the fare to any place sought by the traveler. It could be

fairly deduced from the evidence that there was a national system of which the defendant's business was a part, because the witness Bennett testified that the defendant said the fare to Los Angeles would be $10 and that that city was as far as Edwards' automobile was going, but further told Bennett that if he would pay $12.50 for a ticket that arrangements would be made after reaching Los Angeles for him to be taken on to Bakersfield, his ultimate destination.

The defendant had an established place of business. He arranged the place at which the passenger would take the conveyance and it is evident that he proposed to furnish transportation to all persons indifferently who might make application to him.

The cases cited to support the contentions of defendant involve an interpretation and application of statutes regulating motor carriers which are not worded the same as ours. The Texas statute involved in Ex parte Martin, 127 Tex. Cr. R. 25, 74 S. W. 2d 1017, 1018, provides that the act shall not apply to the owner of any vehicle "not engaged in the business of transporting persons for hire."

In the State of Washington, in order to come within the provisions of the motor carrier act, the person must be operating a motor vehicle "used in the business of transporting persons * * * for compensation over any public highway." Strickler v. Schaaf, 199 Wash. 372, 91 P. 2d 1007, 1008, 123 A.L.R. 226.

In Oklahoma a Class B motor carrier not only includes common carriers engaged in transporting persons or property between fixed termini or over a regular route, but also includes private carriers for hire.

We think the contention of defendant that the county attorney erred in his cross-examination by asking him

concerning other offenses which he had committed is without merit. That part of the cross-examination objected to concerned prior convictions which the defendant had sustained. When the defendant chose to testify he became subject to the same rules of cross-examination and impeachment as other witnesses and in this connection it was perfectly proper for the county attorney to question him concerning prior convictions for the purpose of affecting his credibility. James v. State, 64 Okla. Cr. 174, 78 P. 2d 708.

Despite the fact that the defendant has a bad criminal record, we do not think that the facts in the instant case are sufficient to justify the assessment of the maximum punishment. The facts are such that the defendant might have honestly thought that he was not violating the law. Since this is one of the test cases which was instituted before the rendition of our last opinion hereinabove noted, we have come to the conclusion that the maximum fine of $1,000 assessed the defendant is excessive under the facts and should be modified to a fine of $100. Especially do we think modification is in furtherance of justice by reason of the fact that the evidence against accused was secured and the prosecution started by hired agents of motor carriers who were competing with defendant's business.

It is therefore ordered that the judgment and sentence of the court of common pleas of Oklahoma county be and the same is hereby modified by reducing the fine from $1,000 to a fine of $100, and the judgment and sentence, as thus modified, is affirmed.

BAREFOOT and DOYLE, JJ., concur.