Ernest L. CHAUNCEY, Appellant,

v.

John M. KINNAIRD, Com'r of Dept. of Motor Transportation et al., Appellee.

Court of Appeals of Kentucky.

Dec. 10, 1954.

Rehearing Denied June 3, 1955.

William G. Lehnig and Charles E. Duncan, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., George M. Catlett, Frankfort, for appellee.

MOREMEN, Justice.

Appellant, Ernest L. Chauncey, resides in the city of Lexington and is employed at the Lexington Signal Depot which is situate about ten miles outside the city limits. He drives his automobile between the two places, and customarily carries with him two or three fellow employees who pay the sum

of 25 cents for the service. The Department of Motor Transportation informed appellant that this arrangement was in violation of the Motor Carrier Act, Chapter 281 of Kentucky Revised Statutes, and ordered him to discontinue his activity.

Appellant petitioned Franklin Circuit Court for a declaration of rights and there it was adjudged that appellant by regularly and repeatedly furnishing transportation service to others for money became a contract carrier by motor vehicle within the provisions of the Motor Carrier Act and was subject to all laws and regulations applicable to other contract carriers.

Contract carrier is defined by subsection (11) of KRS 281.010 as follows:

"The term 'contract carrier by motor vehicle' means any person who, under individual contracts or agreements, engages in the transportation * * * by motor vehicle of passengers or property in interstate or intrastate commerce."

We have found no authority which contains a discussion of the question here presented although the formation of "car pools," and arrangements such as we have here, reached considerable popularity during World War II and the period that followed. Much has been written, however, about the right of the general public to use the highways and about the state's power to regulate commerce over them. Our difficulty lies in the necessity to draw a hard line of distinction between the right and the power.

We said in Bell Bros. Trucking Co. v. Kelley, 277 Ky. 781, 127 S.W.2d 831, 837, quoting with approval from Scott v. Hart, 128 Miss. 353, 91 So. 17:

" 'There is a vast difference between the rights of a citizen to travel upon the highways and transport his property over them in the ordinary course of life and business and the right or privilege of one who uses the highway for his place of business and private gain.' "

But the determination of the exact point where a citizen ceases to travel over the highways "in the ordinary course of life and business" and begins to use "the highway for his place of business and private gain" should result only from an examination of the facts of each case, because the degree of difference diminishes as the individual facts shade in, step by step, to the center from the extreme poles which mark the outer limits of the initial "vast difference."

We believe it unnecessary to cite cases which uphold the commonwealth's power to provide for fair and impartial regulation of those who are engaged in the transportation by motor vehicle of passengers or property in commerce, or those cases in which the plain right of a person to use the highways is affirmed. The cases, which involve facts that place them between the extreme poles, require discussion.

In Straight Creek Bus, Inc., v. Combs, 287 Ky. 754, 155 S.W.2d 208, it appeared that Combs owned a station wagon which he used to transport for hire persons from their residences in and around Pineville to a mine at Crockett. He made three trips daily, two of which almost coincided with the bus company's schedule. It was plain that these trips were not taken in the ordinary course of life and business nor were they merely incidental thereto. He was plainly engaging in a business upon the public highway and the court held that he was subject to the statutes regulating the transportation business.

In Black v. Palmer, 293 Ky. 231, 168 S.W.2d 752, 755, a motorist who had a contract for carrying mail and who also had a taxicab certificate, a truck certificate and a driver's license daily hauled passengers between intermediate points along a road which was also traveled by a properly licensed motor carrier of passengers. He sought to evade the provisions of the act relating to motor carriers by collecting weekly fees ostensibly for carrying the passengers' luggage. The court said:

"The trips made by defendant in performing the character of transporta-

tion complained of were not 'occasional or casual' ones. On the contrary, such trips and the transportation complained of, were made over a regular route, also on schedule time, and were the same as those performed by plaintiffs under their permits to operate passenger busses along and over the same route. Therefore, the unauthorized acts of defendant were in direct competition with plaintiff's business, given them by their permits; whilst defendant was given no such privilege by his permits."

In A. W. Stickle & Co. v. Interstate Commerce Commission, 10 Cir., 128 F.2d 155, 160, cited by both parties, where a corporation engaged in the sale of lumber also operated a fleet of motor trucks which were used to transport lumber from the mills to the purchasers and where the amount which the company received from the customers in excess of what was paid at the mills approximated the charge a carrier who had complied with the Motor Carrier Act would make by transporting lumber, the court held that this transportation of lumber was not merely incidental to the corporation's chief commercial enterprise and further held that it was used as a mere matter of evasion, saying: "The transportation is not merely incidental to the business of selling lumber. It is a major enterprise in and of itself."

In Herring v. State, 60 Okl.Cr. 449, 64 P.2d 921, 924, although the court decided that Herring was in the transportation business because of his activities in connection with a travel bureau, it made this observation: "We are satisfied the state is without power to forbid or to make criminal the act of carrying one or more persons as a special undertaking or single transaction, on a share expense basis or for hire by an owner or driver of a motor vehicle."

It seems to us that in all cases the courts have not forsaken the original definition of the word, commerce, which connotes the exchange of merchandise *on a large scale* between different places or communities. State ex rel. Taylor v. Ross, 16 Ohio Dec. 704; People v. Epstean, 102 Misc. 476, 170 N.Y.S. 68, and other cases collected in Volume 7A Words and Phrases, Commerce. Although in later years the meaning of the word has been so enlarged that it now seems to cover almost every activity, it still contains the suggestion that the transaction must be something other than trivial or incidental to a person's real purpose. We are not disposed to take a final step which might abridge the "vast difference" between the periphery cases by abolishing the distinction between them, so that in all cases where anything of value passes between the parties to a joint venture the recipient, because of that alone, becomes subject to laws regulating motor carriers. Nor are we inclined to place in this restricted group cases where the owner of a motor car accepts a sum of money which is in effect a share of the expense of a trip taken for the mutual advantage of the travelers. Particularly should this treatment be accorded to instances where the journey is incidental to the main business or purpose of the operator of the vehicle.

We anticipate little difficulty in brushing aside schemes of evasion and determining the true character of the enterprise from the facts of each case.

If it were held that in every trip where expenses were shared the owner was subject to the motor carrier law, it would result that the host would be compelled always to carry the full burden. We think the world already has enough "free loaders" without this court creating a new compulsory class.

Judgment reversed.